Case 14-3074, United States of America v. Sylvan D. Abney Appellant. Ms. Murphy for the appellant, Mr. Apperson for the appellee. Good morning. Sorry, I'll be right in. Of course. The bench up here is smaller than normal. Please proceed. May it please the Court, my name is Rachel Murphy. I represent Appellant Mr. Sylvan D. Abney, and I would like to reserve three minutes of my time for rebuttal. Mr. Abney is sitting in prison right now, serving a 10-year mandatory minimum sentence that he received on August 2, 2010. Had he received effective assistance of counsel and been sentenced just one day later, he very likely would not be in prison today. Let me ask you, we all learned in law school the phrase, hard cases make bad law, right? And this may be an example of this. I note that the government below did not oppose this, but they are now, presumably because this can be tough to find a rule to govern this. What's the rule that you would have us apply here? Your Honor, I think that this case actually fits comfortably within the four corners of Strickland, which is that counsel must act objectively, reasonably, based on the facts and knowledge counsel has before him. The rule I'm looking for is the ability of an attorney to forecast the change in law. On these facts, you're one day away from a drastically reduced sentence, and that's what makes this, at least for this judge, a hard case. But what's the rule that we would apply that would capture your client and yet not open the door to requiring attorneys to forecast the law? Well, while we do not think that this case requires any new rule to have a finding in favor of Mr. Abney, certainly at the point where counsel is aware that this legislation has passed both houses of Congress, counsel sits down and reads its terms. So we don't have any concern, for example, about imposing a duty upon counsel to monitor pending legislation or be aware of any possible legislation. To me, it's not the fact. Everyone knew the FSA was going to be there. That's not science. That was not. It's Dorsey. It's knowing if there is going to be retroactivity, where does it apply? That's where, at least for me, it gets quite tricky. What should have been the proper period of time that a reasonable attorney, in your view, would have asked for a continuance? Past the sentencing date? Past the guideline date? Do we know that? I certainly think that any objectively reasonable attorney would have moved for, at a minimum, a continuance to allow for that ten-day period for the bill to become law upon presidential signature, the expiration of that ten-day period. In Mr. Abney's case, that ten-day period actually only would have required an additional four-day continuance out from his particular sentencing date. So write the rule for me. You're right. Here's the pen. You get to write the opinion. This is hypothetical, by the way. Right. Right, of course. I won't let it go to my head. I think the rule would be that, in accordance with Strickland's well-established principles, that an objectively reasonable counsel must advocate his client's cause and abide by that overarching duty to advocate on behalf of your client, where that counsel is aware of this legislation that has just passed Congress and manifests a personal belief, which, as you stated, is not science. Everyone knows it's going to become law. And that counsel also takes the step of actually calculating the client's reduced sentence under that law. Counsel must take the de minimis procedural step that, in Mr. Abney's case in particular, posts absolutely no downside risk of moving for a brief continuance so as to preserve your client's chances at a statutory mandatory minimum sentence that will be reduced by half. That's a long rule. That's a long rule. What you're saying is a reasonable attorney would have asked for a continuance beyond the signing date, right? I think, sir, at a minimum, an objectively reasonable attorney would have asked for a continuance to get up to that expiration of the 10-day period. But even there, what are the chances that Dorsey would come up? There's nothing on the face of the statute that deals with retroactivity, right? I mean, a reasonable attorney reading the statute wouldn't say, ah, this has a retroactive application. That is where we disagree with you, Your Honor. So certainly there was no express retroactivity provision. But I think it's clear that Strickland deals in reasonable probabilities, not certainties. And Strickland does impose upon counsel a duty to pursue more than those extremely obvious surefire success arguments that an express retroactivity provision would have provided. Here, counsel sits down and reads the law. And critically, there's Section 8 in the Fair Sentencing Act. And in Section 8, and I'm paraphrasing here, obviously, Congress effectively said to the Commission, get revised guidelines in accordance with post-FSA statutory and mandatory minimums on the books right away. So if a counsel had sought, you're saying at a minimum, if a counsel had sought a delay, a continuance until the President signed, that would be minimum. What about seeing the 90-day provision for the guidelines? Wouldn't a reasonable counsel actually seek a continuance beyond that date? Because the guideline date might be a later trigger for retroactivity. I certainly think a reasonable counsel, in an abundance of caution and prudence, would likely have sought that 90-day continuance. With that said, would it be unreasonable if the counsel had not done that? I think that's a harder case because of the text.  We have to write a rule. Right. So I do actually think in that case, on these facts, it would have been unreasonable to seek that continuance out to November for the following reason. Again, there was no – I'm sorry. You're conceding there? It would have been unreasonable. I'm sorry. Could you restate that? Sure. Absolutely. I do think that counsel likely would have been objectively unreasonable in not taking that – moving, excuse me, for that extra continuance out to November, the far end of the sentencing guidelines. But with that said, I don't think this is – this is not that case. Right. Let me ask you, what's the basis for that position when the law, as it existed on the day of sentencing, was that the guidelines in effect on the date of sentencing shall apply? Well, and certainly for that reason, we think that at a minimum any objectively reasonable defense counsel would have sought the 10-day continuance. And for Mr. Abney's case, there can be no argument that that obviously would have been enough here. A 10-day continuance, just meeting that baseline duty under Strickland, would have been enough to get Mr. Abney past the effective date of the Fair Sentencing Act. And as Judge Rogers points out, Your Honors, the background principle of the Sentencing Reform Act says that defendants receive the guidelines that are in effect as of the date of their sentence. And so when Congress in Section 8 said to the Commission, enact on an emergency basis as soon as possible, but no later than 90 days, guidelines that are going to conform to other guidelines, provisions, and post-FSA law, that meant necessarily that Congress is saying that those post-FSA guidelines are going to apply to all offenders, pre-Act offenders and post-Act offenders. And certainly that emergency instruction, that emergency direction, would have made no sense whatsoever if Congress was saying out of the other side of its mouth, notwithstanding that instruction, for all pre-Act offenders for the next five years, because that's the statute of limitations on these crimes. Pre-Act offenders are going to be subject to pre-FSA law, and this emergency instruction and the revised guidelines will mean absolutely nothing for these wide majority of offenders who are going to come through the pipelines over the next five years. I thought your first answer to Judge Griffith was that under Strickland, counsel had an obligation based on a plausible interpretation of a statute that both houses of Congress had passed to act on the basis of that plausible interpretation. So I don't think it's a – Is that your argument? Excuse me. So no, I think the argument, and let me be clear, in the verbiage of Strickland, is that there had to be a reasonable probability that the statute would be tied to sentencing date. And here there certainly was that reasonable probability when one looks at the text of the statute, which we know counsel did here, when one realizes that no retroactivity whatsoever would have undermined the very goals of the Fair Sentencing Act itself. And when one thinks about the practical unlikelihood of the idea that Congress or the courts were going to reopen for sentencing decades' worth of offender sentences. You're setting a very, as Judge Griffith said, long and hard rule for counsel here. And that's why I'm trying to understand what you're arguing the standard is for counsel. So the standard is, and let me be clear, I think Strickland is a very fact-intensive case-by-case analysis. And here you have to ask, as in all Strickland cases, was counsel's conduct objectively unreasonable? So that gets us into what is the proper standard of review, and would it make a difference in evaluating the performance prong of counsel's conduct here? So as the government points out, this court has declined to fix the standard of review. But as this court recently said in McDade, every single other circuit applies a de novo standard of review. The question is, would it make a difference here? I don't think it would. I think Mr. Abney wins under any plausible standard of review that this court would apply. With your honors, Grace, I'll reserve my remaining time for rebuttal. Well, basically we've identified two standards, abusive discretion and de novo. So the abusive discretion here would be, how would you frame that rule? I don't think the abusive discretion standard is actually what is at issue here. So you have the de novo. What standard do you think this court applies? Well, I think as the government pointed out, there is no fixed standard of review, but every other circuit applies de novo review. I know, but we have remained agnostic on the point because we said we haven't faced a case where it made a difference. And I'm trying to understand what your argument is as to why there was an abusive discretion, or would it make a difference to the outcome if our review were to be de novo? I don't think it makes a difference to the outcome of this case, whether it's de novo review or some more exacting standard of review. But as to the abusive discretion point, I don't think that is the applicable standard for the Strickland inquiry here. We do not ask, for example, whether a jurist would have abused his discretion in denying the continuance for purposes of the prejudice inquiry. We ask, rather, under Strickland, would an objectively reasonable jurist have granted this continuance? And under any of those standards, Mr. Abney does win. All right. We'll give you some time for rebuttal. Thank you. Good morning, Your Honor. It's Jay Apperson for the United States. May it please the Court. Your Honor, as a matter of law, an experienced public defender is not constitutionally ineffective for having arrived at a legal conclusion that is supported by four justices of the Supreme Court, three circuit courts of appeals, and the United States Sentencing Commission. Reasonably effective representation does not include the requirement that counsel predict future development of the law. That's not the question here, is it? The question here, it seems to me, is whether Mr. Abney received unconstitutional, inadequate representation because his attorney failed to seek the benefit for his client based on a plausible interpretation of the essay. He didn't have to be right, but it had to be plausible. It couldn't be inconsistent. And he knew what the federal principle was on sentencing. And the prosecutor and the judge basically all acknowledged that. And yet, counsel made no effort to get the judge to postpone this, even though other counsel were asking for continuances. And the government never contested that in the district court. Well, we may not have contested it, but there's no record to support that. The only cases that they, if I may, in the first instance, counsel said I've studied the law and concluded that it was not retroactive. That was the government's assertion at the hearing, the trial court's understanding at the hearing expressed by the trial court and by counsel. But they all recognized that retroactivity was at play, right? They all recognized that retroactivity might be at play in some future time. With respect, only in the context of future legislation, counsel was very clear that future legislative, there may be a legislative, the notion that anybody at that hearing understood or foreshadowed that the Supreme Court might create, for the first time, as Judge Easterbrook points out in his analysis in Holcomb, this is the first time in Dorsey that the Supreme Court has ever applied a partial retroactivity. And they did so under an implied theory of congressional intent, despite the fact that there was no expressed retroactive provision. So let me ask you. Counsel knows that for 20 years there's been an effort to reduce the disparity. And finally, the commission makes a recommendation and Congress acts on it. Why wouldn't a reasonable counsel seek a continuance, knowing that it's the law in effect on the date of sentencing that applies, and then at least his client is in a better position to argue he should get the benefit of that statute than if he's sentenced before that statute becomes effective? Because the law in effect at the time of sentencing, the only law in effect at the time of sentencing under the statutes, is the guideline range. So my point is, if I have a client who's facing a 10-year mandatory minimum, and I know both houses of Congress have passed a statute that's consistent with what the President has said he wants, and so I know he's going to sign it, there wasn't any doubt about that, why wouldn't reasonable counsel say to the district court judge, at least put the question before the district court judge, Your Honor, I'd like my client to get the benefit of this statute and let's continue it. Would you agree to a brief continuance? And the judge might have said no, but at least the issue would have been posed, but counsel stood silent on it. Well, he didn't stand silent. He said, I've looked at the act. It is not retroactive. That is the conclusion of three circuit courts of appeals, and until Dorsey. But, see, you've raised a question as to whether counsel could foresee what the Supreme Court decided in Dorsey, and I'm looking at it as Strickland says. What would reasonable counsel have thought in terms of giving his client the best opportunity to benefit from this reduction in the disparity? Clearly, if I can say, his client is in a less beneficial position if he's sentenced before the statute takes effect. Maybe he has a better chance afterward. Well, not as what counsel understood at the time of the sentencing hearing. At the time of the sentencing hearing, the provision for the guideline reductions. But we're talking about probabilities here, right? You're talking in terms of certainties, and you're right. But we're talking about probabilities and how one best represents a client, a reasonable attorney. And this is recognized in the Office of the Public Defender, right? They recognize that in their view at one point in time, this was a mistake. In hindsight, there's no question about that. Two years later, there's absolutely no question. I find it hard to believe that you, if you were representing somebody in this situation, wouldn't ask for a continuance just on the chance, right? The chance that you might get a benefit from it. Because we're talking about a liberty interest here, right? We're talking about a period of time that your client is going to be in jail or not. And there's a chance out there that by getting a continuance, your client's going to benefit from it. A chance. The question that I'm struggling with is, would a reasonable attorney try and take advantage of that or not? With respect, I think not, based on the – even the sentencing guideline reduction was not going into effect until November of 2010. And when you're talking about a continuance to the 10-day signing, it had absolutely nothing to do. Even if the sentencing – in other words, you – You're speculating. No, no. With respect, Your Honor. Excuse me. I'm sorry. The district court might have said, well, we'd have to continue it until 90 days after the 10 days. And he said, no. The district court might have said, as a reasonable jurist, given you're talking about five years, and this man is already in jail, he's not out on the street, and it's not a big deal on my docket to continue this for 100 days. Well, with respect – I mean, don't you want to give your client that opportunity, that that's what the district court might have done? That's what I don't understand. But, Your Honor, until Dorsey, the only benefit he would have gotten – Not with the mandatory minimums, no. Well, he said, you know, there was an exception even under the mandatory, how you can get out from under. But the district court, I'm assuming, said, I couldn't make the findings necessary to reach that position. So he said, I'm bound to give you 10 years. Well, the only provision was substantial assistance, and that's the reason why the sentence was continued for a year over almost two years in the first instance, to allow the appellant to earn substantial assistance. He thumbed his nose at that, was arrested, violated a number of crimes, including drug use, violated a plea agreement. Well, we don't know what happened other than that the government reported that cooperation did not work. And the other crimes, if I read the record, occurred in another jurisdiction. Well, there are a number of crimes. One, there were drug use, so that's established by preponderance of the evidence, which itself is a violation of his plea agreement. And he was also charged with attempted murder in Maryland. That charge was later presumably dropped. So let me ask you, when you read Strickland and subsequent cases in the Supreme Court, what standard of review do you think the court is applying? I don't know the answer to that, Your Honor. Have you thought about it? No, because I think this case can be decided, as I suggested initially, as a matter of law with respect to counsel's conclusion that was supported by the justice of the court, the circuit courts, and the sentencing commission, which until Dorsey, this was a novel notion. The Supreme Court had never, prior to its decision in Dorsey, ever established a sentencing date for mandatory minimum sentences. But that means you have to be sort of the ostrich with your head in the sand. This is a two-decade effort because the sentencing commission and finally both houses of Congress agreed that the disparity was unfair. Well, but even Dorsey admits that there's always going to be disparity. In fact, Dorsey said our decision today creates additional disparity. I know, but do you go for 100% disparity or 20% disparity? I mean, we're talking here about a counsel's obligation to argue on behalf of his client in a manner that gives the client the best advantage vis-a-vis what the district court is going to do with sentencing. That's all I'm getting at. Why wouldn't you make your best effort? And maybe the district court denies your request for a continuance. And maybe the Supreme Court down the road says it only applies to people who committed offenses after the effective date of the act. But all of that is unknown. Indeed, it is unknown. And it's unpredictable at that time because no court had ever, Supreme Court or otherwise, had applied a novel theory of partial retroactivity by plucking out a standard from the sentencing guidelines realm, background principle, is what Justice Breyer referred to in Dorsey. Plucking that principle and applying it. So counsel would never be ineffective under the performance prong in the government's view unless it could point to, obviously, Supreme Court authority, but other authority indicating that, in fact, his client could benefit from a new statute? I don't know that that's required. All right. So let's back up. What is required? Well, what is required is the reverse of whether it's appellant's burden to show that counsel was ineffective for not having predicted what the Supreme Court would do on a novel legal principle in Dorsey. I don't know where you get that standard. That's all I'm getting. Go ahead. It seems like the questioning from the bench raises an interesting question, which is really what standard are we looking at? Normally we say, was it objectively reasonable for counsel to have done something? Here we're also looking at, was there a reasonable probability that something would have changed in such a way that counsel somehow would have had to at least put that in play, let's say, not accept it as, you know, objectively reasonable. So in effect, does that change the standard? Well, I think the standard is not whether the particular position was arguable, as appellants have argued, but whether or not it was unreasonable not to take that position. And it is not unreasonable not to take that position in light of the fact that no court had ever come up with this novel legal theory to apply. In fact, Congress declined to make it expressly retroactive. They know how to make it retroactive, and they want to. Counsel, I doubt that you'll ever be in a circumstance where you'll need an attorney in a criminal matter, but you'd want your attorney to take that approach? We must avoid, as Strickland cautions, the hindsight. It's got to be judged on the hindsight. We're looking at an attorney whose client is facing a mandatory 10-year prison sentence, where for decades there's been this effort to reduce the disparity. And finally, Congress has acted, and counsel knows that, and knows the president is going to sign the bill. And it does not provide for retroactivity. And it doesn't even provide for retroactivity. Shouldn't you raise that possibility with the district court by saying, please continue this until my client can get the benefit of this new standard? In hindsight, that's lovely, and there's no question. His attorney thinking about how best to represent his client. What's the downside from a defense attorney's point of view of asking for a continuance? Because that's not the standard. The question is whether it's objectively unreasonable not to have raised the issue. Well, you have to figure in the downside when you're talking about reasonable activity. Hopefully you're thinking of downside. Yeah. Counsel looked at the statute. It did not provide for retroactivity. No court had applied a retroactive standard before that. It holds counsel to an impossible task to have predicted Dorsey. And the court also on the second issue, even if counsel was required to have made that point, found that Pellin did not met his burden with respect to whether or not the court would have granted the continuance. And under these circumstances, Pellin cannot meet that burden. Well, under the Gantt standards that we've adopted, why wouldn't he have met the standards? Well, because part of those factors under Gantt is the previous delays. This has been delayed almost two years. Whether or not Pellin contributed to the need for the continuance, and he clearly did. This should have been sentenced two years ago, three years ago. He's in jail and been in jail this entire time. So in terms of protecting the public. So I just want to be clear about what we're talking about. The other cases talk about where the defendant has moved for a continuance because he wants to further investigate his case or something like that. And the district court judge said this sentence has been sentencing and hearing has been continued multiple times because of the defendant. Well, only because he was arrested. So it is his fault in that sense, but it's not quite like the other cases. Well, there's no question that the cases are different factually, but the issue, as Gantt said, whether or not there had been a continuance. And Rule 32 requires that courts should impose sentence without undue delay. So it had already been delayed almost three years. As the court indicated in making its ruling on this, it didn't know whether, had it been asked, it would have done so. But the felon has a burden to show that the court would have granted that and didn't meet that burden. I'm sorry? Would have? I don't think that's the burden. You're talking absolutely here. Reasonable probability is the same standard on this question. I mean, the district court says it would like to impose a lesser sentence. So you have the district court on your side in that regard. And you say, Your Honor, you know this new statute. Could we just continue this for a couple of months? And as far as the district court judge, a sentencing continuing in terms of a disruption of a docket is a very different matter than continuing a trial. And there's no – what is the strategic theory? I know your brief makes some speculations about the government would withdraw the plea agreement, but we're talking on district court, a reasonable prosecutor here. Well, of course, we responded in our brief with respect to the strategic because counsel on their brief, page 16 of their brief, said there's no conceivable reason of any strategic reason. So we're rebutting that. And we have offered that reason, I think, as a sound one. The felon had clearly thumbed his nose at the extraordinary opportunity to have been out trying to earn substantial assistance, delaying his sentencing for two years, committing other crimes, as the court noted when it said the appellant didn't meet his burden on this second question, and the seriousness of the offense. And you look at the big picture here. This fellow got an extraordinary deal in his plea agreement. He came off a 924C gun count within five years on top of his drug dealing in a school zone. So he got an extraordinary deal and opportunity. And the court, in denying the motion, expressly said the seriousness of the crimes and noted the school zone and the loaded gun. Well, apparently Congress had decided that the appropriate sentence should be different. All right. And that's what counsel knew at the time of the sentencing. With respect, the Congress did not decide that it should be retracted. They know how to. Except for a person who committed this offense. Let's assume it's in the future. Congress says there's no mandatory 10-year minimum. Very clear Congress has made that determination. That's correct. Without retroactivity, because there are costs on retroactivity. Even the guidelines were not going to be automatically retroactive. So your position is that the statute says directly this statute shall not be retroactive? No, the statute does not say. It does not have a retroactive. Well, with respect, the 1 U.S.C. 109, the savings clause, Congress knows that that's there as well. And that was the Seventh Circuit decision in Fisher and Dorsey at the circuit court, the first one out of the box. It wasn't until the Eleventh Circuit in Rojas that moved the date in their theory that later picked up in Dorsey. Well, what I'm trying to get you to focus on is you're representing a client, and no court has decided this issue. And you're trying to put the best argument for your client. And why wouldn't you give the district court the opportunity to rule in a way that might benefit your client? That's what I don't understand. Well, because it would have been extraordinary in that day before any court had come up with this nonbelievable theory. But the district court could have said that. All right? But counsel never gave the court the opportunity to say that. The court might have had a very different response. That's all I'm getting at. You seem to be arguing that you have to be able to predict. I am arguing that. All right. And let me be clear about that. I believe that the rule of this court in saying that counsel is ineffective for not having predicted, that will be the rule. And I don't think that this court will adopt that rule. Okay. Well, I noticed your 28-J letter cited a lot of cases from the Eleventh Circuit. But we have cases in this circuit where we say counsel doesn't have to be able to predict that Congress is going to pass a statute in the future. So, I mean, that's no new law as far as this circuit is concerned. No, Your Honor. The unpublished opinion from the Eleventh Circuit dealt on this very point, whether counsel was required to raise a Dorsey argument. And that adds to our other case from the Eastern District of North Carolina in which the district court judge – Well, this circuit has taken a different point of view. And the question is open here, so that's why I'm trying to press you to see. The government says you have to be able to predict accurately. Well, as far as I know, the only courts addressing this direct question have ruled that counsel is not ineffective for not raising a Dorsey claim. I can think of so many instances where they're open questions, and your view is counsel has no reasonable obligation to present those issues on behalf of his client because there is no case out there that's been decided in his favor. Well, I don't think it's limited to just that there's no case. It's also the convoluted reasoning that – I don't want to say convoluted. I don't want to be a peer criticizing the court's decision in Dorsey, but it was certainly novel. They plucked for the first time this background principle from the guidelines statute and now applied it to essentially impliedly revoking Section 109. That's what counsel decided. That's what the court said. I understand, but they didn't do so until two years afterwards. No, but the question was open. There was no question. Suppose the court might have ruled in his client's favor. That's all I'm getting at. So why wouldn't you at least give the district court the opportunity to address that issue that might result in something that would benefit your client? That's my only point. You have to have a case, you have to predict accurately, or there's no obligation on counsel to raise an issue. I can see that. I don't think you have to have a case for that. I think there has to be some reasonable basis to say that this is in the universe of possibilities, and I just don't think it was. I mean, counsel in Fisher noted that – The universe of possibilities, but clearly subsequent events has proved that it was possible. Subsequent? Of course it has. In hindsight, we're all here. You don't know. Exactly. So you just remain silent? I don't understand that position. Well, I think the extraordinary burden put on counsel that they would have to predict how Dorsey was decided for the first time in the history. That's not the standard. With respect, I think it is the standard. I know. That's the way your brief is written. I understand that, but that can't be the issue, that counsel has to be able to predict how the Supreme Court may decide a case in the future, or there's no obligation to raise a question even though the question is open. No court has decided in a manner contrary to his client's interest. Well, even this court in Fields noted the peculiarity of this application, partial retroactivity, sentencing date. It said that Dorsey produced its own degree of arbitrariness, and the sentencing date is dependent on the vagaries of the judicial system, has nothing to do with the goals of sentencing. Even opposed Dorsey, this court recognized it's a peculiar ruling, and to require counsel to predict in a crystal ball a peculiar ruling by the Supreme Court two years later is asked too much. All right. Thank you, counsel. I thank the court. We ask that the judgment of the district court be affirmed. Thank you. Counsel for appellant. Give you a few minutes. Thank you, Your Honor. I think the government's position in its briefings in here today makes clear the difference between the duty that Strickland imposes upon counsel to advocate for your client's cause and what a disinterested, detached observer, a court subsequently evaluating the facts and legal issues do. Here, Strickland says that counsel must act objectively and reasonably based on the facts known at the time. And here there was a reasonable probability or plausibility that the fair sentencing act was going to be tied in some regard to the date of sentencing. And while perhaps, as the government notes, it was an uncertainty, that uncertainty does not excuse a total and abject failure to act on your client's behalf. And imposing upon Strickland petitioners the burden to show that somehow counsel needed to predict Dorsey in order for it to have occurred to counsel to have moved for continuance both heightens the burden unduly on Strickland and also waters down Strickland's Sixth Amendment protections, diluting those to essentially say that counsel need only pursue those surefire arguments of success. That's not what Strickland says. It requires a bit more than that on behalf of defense counsel. All right. Thank you. We'll take the case under advisement.
judges: Rogers, Brown, Griffith